IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


TIMOTHY A. REA,                          :
        Plaintiff
                                         :

        vs.                              :    CIVIL NO. 1:CV-06-1920

                                         :
THE HERSHEY COMPANY 2005
ENHANCED MUTUAL SEPARATION PLAN, :
and THE HERSHEY COMPANY
        Defendants                       :


M E M O R A N D U M


I.    Introduction

        Plaintiff, Timothy A. Rea ("Rea"), filed an amended

complaint (doc. 17) against his former employer, The Hershey

Company ("Hershey") and the Hershey Company 2005 Enhanced Mutual

Separation Plan ("the EMSP").[1]  Plaintiff's complaint contains

three counts for relief pursuant to the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

Count I seeks relief pursuant to ERISA section 502(a)(1)(B), 29

U.S.C. § 1132(a)(1)(B), for the denial of Rea's application to

participate in the EMSP and its benefits.  (doc. 17, ¶¶ 16-44).

Count II alleges that the Hershey Company interfered with Rea's

ERISA rights in violation of section 510, 29 U.S.C. § 1140.  *Id.*

_____

        [1]  Rea's initial complaint (doc. 1) named the Plan Administrator
of the Hershey Company 2005 Enhanced Mutual Separation Plan as a
Defendant.  After submitting an unopposed Motion to Amend the
Complaint (doc. 14), Rea filed an amended complaint (doc. 17) on
January 4, 2007.  The amended complaint named the Hershey Company
2005 Enhanced Mutual Separation Plan as a Defendant instead of the
Plan Administrator of the Enhanced Mutual Separation Plan.

¶¶ 45-56.  Count III is a breach of contract claim for the stock options and compensation available through other benefits plans which Rea claims he would have received had Hershey not denied his EMSP application.  *Id.* ¶¶ 57-66.

Defendants have moved to dismiss two of the three counts of Plaintiff's amended complaint for failure to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  As noted, the parties stipulated that Rea could amend the complaint after Defendants filed their motion to dismiss. Therefore, the parties agreed that we would consider Defendants' previously filed motion to dismiss with respect to Counts II and III of the amended complaint.  *See* doc. 19, p. 2 n. 1.  We will grant Defendants' motion to dismiss Counts II and III of the amended complaint.

II.   Background

In reviewing Defendants' motion to dismiss, we accept as true the allegations contained in Rea's amended complaint and look to them for the relevant background.

Hershey hired Rea on May 6, 1996.  By August 31, 2005, Rea had advanced to the position of Director of Food and Beverage Enhancers and Special Trade Channels.  (doc. 17, ¶¶ 17, 18).  As noted, Rea's lawsuit arises from the denial of his application to participate in the 2005 EMSP.  On July 21, 2005, Hershey adopted the EMSP in order to "provide additional

benefits and compensation . . . to certain employees of the
Company, . . . who voluntarily elect to terminate their
employment under the terms and conditions [of the Plan]." *Id.* ¶
8 (quoting doc. 10, p. 1). Among other benefits, EMSP
participants are eligible to receive: (1) separation pay
consisting of three weeks of base pay for each year of
employment; (2) participation in Hershey's retirement plan for
the duration of the separation period;[2] (3) full vesting of all
stock options granted to the employee through the Key Employee
Incentive Plan ("KEIP"); and, pursuant to the Annual Incentive
Plan ("AIP"), (4) payment of Hershey's annual bonus for 2005;
and (5) payment of a prorated portion of the 2006 annual bonus.
*Id.* ¶¶ 13, 14.

Full-time salaried employees as of July 21, 2005, who
were hired before January 1, 2004 were eligible for the EMSP.
*Id.* ¶ 9. To apply for participation, employees were required to
submit a Separation Agreement, General Release, and an
Acceptance Form signed by the employee and the employee's
manager by September 8, 2005. *Id.* ¶ 11. In addition, the
Hershey Executive Team ("HET"), a group of Hershey-designated
executives, retained the authority to deny an EMSP application
if it "determin[ed] that the termination of employment of such

---

[2]The Separation Period is a window which begins on the
employee's separation date and ends either (1) twelve weeks later, or
(2) on the date reached after multiplying three weeks by the
employee's years of service, whichever is later. (doc. 10, at
F.1.(a))

employee [would] have an adverse affect on the [Hershey] Company's ongoing business operations." *Id.* ¶ 10.

Rea's amended complaint alleges that he submitted the required forms to the Hershey Company Work Life Center on September 1, 2005. *Id.* ¶ 20. Rea also contends that Tom Hernquist, President of the U.S. Confectionary Division of Hershey, signed the Acceptance Form and agreed to Rea's proposed date to leave his position at Hershey. *Id.* ¶ 19. On that date, another Hershey employee, Eric Lent, announced that Rea would be leaving his job at Hershey Company pursuant to the EMSP. *Id.* ¶ 22.

On September 30, 2005, however, Rea received a letter informing him that the HET had rejected his application for the EMSP. The letter explained: "Your position was not eliminated (in your group's reorganization) and the Company would like you to continue in your position." *Id.* ¶ 25. A HET member's handwritten note on the Acceptance Form accompanying the letter stated: "For critical business needs, the employee's request to participate in the [EMSP] has been rejected." *Id.* Neither of these documents identified the critical business needs which would be affected by Rea's departure from Hershey. *Id.* ¶ 28.

On September 30, 2005, Rea left his position at Hershey and sent a request to the EMSP Administrator to review the HET's decision to deny his application. *Id.* ¶ 33. The Plan Administrator denied the appeal on November 28, 2005. *Id.* ¶ 35.

Rea filed a second appeal which the Administrator denied on March 21, 2006. *Id*. ¶ 38. Rea alleges that he has exhausted every avenue available for internal review of the denial of his application, and that further appeal to the Administrator would be futile. *Id*. ¶ 39.

Rea's amended complaint alleges that the Administrator wrongfully rejected his EMSP application. Rea's second count contends that the HET intentionally interfered with his ERISA rights by also denying his EMSP application. Third, Rea claims that by improperly denying his application, the HET breached a contract for his receipt of benefits under the KEIP and AIP benefit plans. Rea seeks damages including: the profit he would have received by exercising his stock options, the 2005 and prorated 2006 bonuses he would have received for participating in the EMSP, attorneys' fees, and costs.

III. <u>Discussion</u>

   A. *Standard of Review*

A motion to dismiss for failure to state a claim tests the sufficiency of the allegations contained in the plaintiff's complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A court will not grant a motion to dismiss pursuant to Rule 12(b)(6) unless it is apparent that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. *Seinfeld v. Becherer*, 461 F.3d 365, 367 n.1 (3d Cir.

2006).  A court must accept as true all well-pleaded allegations

in the plaintiff's complaint and draw all reasonable inferences

from the complaint in the light most favorable to the non-moving

party.  *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988).

    B.  *Count II: Interference with ERISA Rights*

      Count II in Rea's amended complaint seeks relief

pursuant to ERISA section 510, 29 U.S.C. § 1140, because

"Hershey Company, as the employer of the [Hershey Executive

Team], purposefully interfered with Plaintiff's rights to

receive ERISA benefits."  (doc. 17, ¶ 55).  Rea contends that

the HET knew it could not meet the EMSP's criteria for denying

his application, but did so anyway because it believed Rea would

leave his job regardless of the EMSP decision.  *Id*. ¶ 51.

Consequently, Rea alleges that the HET falsely claimed there

were critical business needs requiring rejection of his EMSP

application.  *Id*. ¶ 52.

      Section 510 of ERISA provides, in relevant part:

> It shall be unlawful for any person to
> discharge, fine, suspend, expel, discipline,
> or discriminate against a [plan] participant
> or beneficiary . . . for the purpose of
> interfering with the attainment of any right
> to which such participant may become
> entitled to under [an employee benefit
> plan], this subchapter, or the Welfare and
> Pension Plans Disclosure Act. . . .

Congress enacted section 510 primarily to prevent 'unscrupulous

employers from discharging or harassing their employees in order

to keep them from obtaining vested pension benefits.'" *Haberern*

*v. Kaupp Vascular Surgeons Ltd. Defined Benefits Pension Plan*, 24 F.3d 1491, 1502-03 (3d Cir. 1994) (quoting *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987)).  A showing that the employer made a conscious decision to interfere in the employee's attainment of ERISA benefits is required.  *Stout v. Bethlehem Steel Corp.*, 957 F. Supp. 673, 693 (E.D. Pa. 1997). An employee may use either direct or circumstantial evidence to establish the employer's intent in the interference claim. *DiFederico v. Rolm Co.*, 201 F.3d 200, 204-05 (3d Cir. 2000).

When the employee uses circumstantial evidence to show such intent in a section 510 claim, the Third Circuit has established a scheme of shifting burdens modeled on the approach in Title VII employment discrimination claims.  *See Gavalik*, 812 F.2d at 852.  "To establish a *prima facie* case under ERISA § 510, an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."  *Id.*  If the employee, by a preponderance of evidence, makes a prima facie case, the burden of production shifts to the employer to present evidence of a legitimate, nondiscriminatory reason for its actions.  *Id.* at 853.  If the employer meets this burden, the presumption created by the prima facie case disappears, and the employee then has the opportunity to show that the employer's articulated reason is actually a pretext for interfering with ERISA rights.  *Id.*

Use of the burden-shifting scheme, however, is predicated on an employer engaging in activity proscribed by section 510.  The "prohibited employer conduct" under section 510 includes an employer's decision to: "discharge, fine, suspend, expel, discipline, or discriminate against a [plan] participant or beneficiary."[3]  29 U.S.C. § 1140.  The Third Circuit has concluded that section 510's use of "discriminate," while potentially subject to broad interpretation, is "limited to actions affecting the employer-employee relationship." *Haberern*, 24 F.3d at 1503; *Fischer v. Philadelphia Elec. Co.*, 96 F.3d 1533, 1543 (3d Cir. 1996).  *See also Deeming v. Am. Standard Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990) (requiring "an allegation that the employer-employee relationship . . . was changed in some discriminatory or wrongful way").  Section 510 "was designed to protect the employment relationship which *gives rise* to an individual's pension rights."  *Haberern*, 24 F.3d at 1503 (quoting *McGath v. Auto-Body North Shore, Inc.*, 7 F.3d 665, 669 (7th Cir. 1993)).

In opposing Defendants' Motion to Dismiss, Rea focuses on Hershey's specific intent to interfere with ERISA rights as the critical element in evaluating his section 510 claim.  *See* doc. 13, p. 9.  In doing so, however, Rea fails to meet the

---

[3]  Rea may be classified as a "participant" for purposes of ERISA section 510.  ERISA defines a "participant" as: "any employee or former employer of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ."  29 U.S.C. § 1002(7).

first requirement for a prima facie case: prohibited employer conduct. *See Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 522 (3d Cir. 1997) (identifying the elements for a plaintiff's prima facie case). Any inquiry into Hershey's intent in acting to deny ERISA benefits can only occur after we have concluded that the HET's decision to deny his EMSP application was discriminatory conduct under section 510.

Rea fails to allege the requisite discriminatory conduct. Rea's allegations, which we must accept as true, highlight the alleged basis for the HET's decision to deny Rea's EMSP application. Rea alleges that "HET knew that there were no bona fide critical business needs justifying a rejection of Plaintiff's participation in the Plan; but claimed such needs existed intending to purposefully prevent and interfere with Plaintiff's receiving Plan benefits." (doc. 15, ¶ 52). According to Rea, the HET fabricated the reasons given to deny his application because it believed he had already accepted a job elsewhere, and denying his application would not affect his decision to leave Hershey. *Id.* ¶ 51. Rea concludes that "Hershey's implementation of disparate criteria to deny Plaintiff's participation it the [EMSP] was, therefore, an unlawful, discriminatory action." (doc. 13, p. 7).

As noted by Defendants, Rea's allegations fail to show any action taken by Hershey affecting the employer-employee relationship. Instead, the claim centers on the HET's decision

to deny Rea's application despite its knowledge that his decision to leave Hershey would not adversely affect the company's business.  But the HET's decision, and its underlying motive, must be distinguished from actionable discriminatory conduct under ERISA section 510.  The HET's decision to deny Rea's application had no effect on the employer-employee relationship between Rea and Hershey.  The amended complaint reveals that Rea simultaneously submitted his application for the EMSP and his notice of separation from employment with Hershey.  (doc. 17, ¶¶ 11, 47).  Rea, not Hershey, altered the employer-employee relationship.  The allegation that Rea decided to leave Hershey only after deciding "that he could not properly be excluded from [EMSP] benefits" (doc. 17, ¶ 48) does not alter our conclusion.  Rea's decision to leave Hershey after concluding that he could participate in the EMSP does not mean that the HET's subsequent decision to deny his application, regardless of its motive, was a decision affecting the employment relationship.  Consequently, the allegations in Count II of Rea's amended complaint fail to allege discriminatory conduct pursuant to ERISA section 510.  As indicated previously, we will dismiss Count II of Rea's amended complaint.

C.  *Count III: Breach of Contract*

According to Rea, as a Hershey employee, he was a participant in the Hershey Foods Corporation Key Employee Incentive Plan ("KEIP").  (doc. 17, ¶ 59).  The KEIP, which Rea

contends "is not an ERISA covered plan," provides a number of benefits, two of which are the subject of the breach of contract claim.  First, the KEIP provides stock options to certain Hershey employees.  Second, the KEIP permits certain Hershey employees to participate in the Annual Incentive Plan ("AIP"), a company bonus plan.  The EMSP makes these benefits available when a participant is no longer employed by Hershey.  Pursuant to the EMSP, a participant's stock options awarded through the KEIP are fully vested on the date the participant leaves Hershey.  *Id.* ¶ 60.  Additionally, the EMSP allows participants to receive bonuses awarded through the AIP, which is part of the KEIP, during a defined period after leaving Hershey.  *Id.* ¶ 62. Count III alleges that Hershey was in breach of contract by refusing to pay Rea the KEIP benefits when he left employment at Hershey.[4]  Defendants have moved to dismiss this claim, arguing that it is preempted by ERISA.

> 1.  *Consideration of the 2002 Key Employee*
>     *Incentive Plan Document in Defendants'*
>     *Motion to Dismiss Count III*

Prior to evaluating the sufficiency of Rea's breach of contract claim, we must address whether we can look to the relevant document to aid our consideration of Defendants' motion to dismiss the claim.  According to Rea, we should not consider the version of the KEIP as it was amended and restated on August

---

[4]  The AIP and KEIP benefits may be payable to the Plaintiff if his ERISA denial of benefits claim is successful.

16, 2005.  (doc. 13, p. 3).[5]  As noted, the KEIP is a benefits plan which provides, among other things, stock options and annual incentive payments to certain Hershey employees.  *See* doc. 13, p. 13 (explaining that KEIP benefits include accelerated stock options and payment of bonuses).

Rea did not attach the KEIP to his initial or amended complaint.  Instead, in submitting its motion to dismiss, Defendants attached a version of the KEIP that Hershey amended on August 16, 2005 ("2005 KEIP").  *See* doc. 10, tab B.  In opposing Defendants' motion to dismiss, Rea contends that he did not have notice of the 2005 KEIP, and only has a copy of a summary of the 2002 version of the KEIP.  (doc. 13, p. 3).  With only a summary of an outdated version of the KEIP, Rea argues that he cannot, without the aid of discovery, dispute the accuracy of the 2005 KEIP.  *Id*.  Additionally, Rea contends that the 2005 KEIP contains information which requires investigation, which may reveal additional facts needed for a dispositive ruling.  *Id.* at 4.

In their reply brief supporting the motion to dismiss (doc. 19), Defendants argue that what is actually at issue is the 2002 version of the KEIP, not the 2005 version which was attached to their motion to dismiss.  According to Defendants, they mistakenly attached the 2005 KEIP to their motion instead

_____

[5]  While Rea challenges use of the KEIP in deciding Defendants' Motion to Dismiss, he does not challenge the use of the EMSP.  *See* doc. 13, p. 3.

of the 2002 version.  Defendants explain that Hershey did not
officially adopt the 2005 KEIP nor has it filed the document
with the SEC.  *Id.* at 10 n.3.  Defendants also assert that the
only differences between the 2002 KEIP and the proposed 2005
KEIP are Hershey's corporate name,[6] and the title of the
corporate officer who signed the KEIP.  *Id*.  As the 2002 KEIP is
the version that is relevant to Rea's claim, we will look to
that version, which is attached to Defendants' reply brief.

     Resolving the confusion regarding the proper version
of the KEIP for purposes of this lawsuit only partially disposes
of Rea's objections to its use in deciding the current motion.
As noted, Rea contends that because he has only a summary of the
2002 KEIP, we may not consider the document.  (doc. 13, p. 3).
In response, Defendants argue that we may look to the 2002 KEIP
because it is a public document which must be filed with the
Securities and Exchange Commission ("SEC") and is readily
accessible through the SEC's "EDGAR" online filing system.
(doc. 19, p. 10).

     We reject Rea's contention that we may not look to the
2002 KEIP document in evaluating Defendants' motion to dismiss
the complaint.  Generally, we may not consider "matters
extraneous to the pleadings" in deciding a motion to dismiss.
*In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426

---

[6]  According to Defendants, Hershey changed its name from
"Hershey Foods Corporation" to "The Hershey Company" in 2005.  (doc.
19, p. 10, n.3).

(3d Cir. 1997).  We may, however, consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefits Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  A plaintiff's claim is based on an exhibit if the document is "*integral to or explicitly relied* upon in the complaint."  *In Re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1224 (1st Cir. 1996)).

Federal Rule of Evidence 201(b) also permits a court to take judicial notice of facts "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *In Re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).  Consistent with Rule 201(b), the Third Circuit has recognized that in considering a motion to dismiss, a court may to look to, among other things, properly-authenticated public disclosure documents filed with the SEC.  *Id.* (citing *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000)).  With respect to documents required by law to be filed with the SEC, "no serious question as to their authenticity can exist."  *Oran*, 226 F.3d at 289 (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

Here, we may refer to the 2002 KEIP because it is a publicly-filed SEC document and is integral to the breach of

contract claim in the amended complaint.  Additionally, Count

III of the amended complaint expressly relies on the 2002 KEIP.

Rea claims: "Under the terms of the KEIP," he was entitled to

(1) the vesting of his stock options on the date he left

Hershey, and (2) payment of a bonus pursuant to the Annual

Incentive Plan.  (doc. 17, ¶¶ 60, 62).  Third, the 2002 KEIP was

filed with the SEC[7] and, pursuant to *Oran*, may be considered

because it is an authentic, publicly-filed document.  Therefore,

we may look to the 2002 KEIP in deciding Defendants' motion to

dismiss Count III, not for the truth of its content, but rather

to determine what the document stated.  *See Oran*, 226 F.3d at

289.

### 2.  *ERISA Preemption of Count III*

In Count III, Rea claims that Hershey breached a

contract with him by "not granting [Rea's] accelerated stock

option benefits and annual incentive pay for 2005 and 2006 under

the Company's Key Employee Incentive Plan (KEIP)."  (doc. 13, p.

10).  According to Rea, the HET claimed that critical business

needs precluded Rea's participation in the EMSP even though the

HET knew that payment of the benefits would not have an adverse

effect on Hershey's business.  (doc. 17, ¶ 64).  Since EMSP

participation was a prerequisite for receipt of KEIP benefits

upon leaving employment with Hershey, the HET's wrongful denial

---

[7]  According to Defendants, the 2002 KEIP was filed with the SEC
as part of Hershey's November 2002 10Q statement.  (doc. 19, p. 10).

of Rea's EMSP application prevented him from exercising stock
options and receiving bonus awards. *Id.* ¶ 66.  Accordingly, Rea
seeks damages in the form of the profits he would have received
by exercising his stock options, the bonuses Hershey would have
paid to him, and liquidated damages pursuant to a Pennsylvania
wage statute. *See id.* at 16.

Defendants move to dismiss Count III on two grounds.
First, Defendants contend that ERISA preempts Rea's breach of
contract claim because it is a state law claim that "relates to"
ERISA.  (doc. 10, p. 12).  According to Defendants, Rea's
"breach of contract claim is entirely dependent on the viability
of his ERISA claim, which is entirely dependent upon the Court's
interpretation of the eligibility criteria under an ERISA plan
(here, the EMSP)."  (doc. 19, p. 8).  Put differently,
Defendants claim that if there were no EMSP (an ERISA plan), Rea
could not bring a breach of contract claim under the KEIP. *Id.*
Similarly, Defendants' second ground for dismissal is that
Hershey did not breach a duty to Rea because his eligibility for
the benefits was contingent upon his participation in the EMSP,
a separate decision made by the EMSP Plan Administrator. *Id.* at
11.

In opposing Defendants' preemption argument, Rea
contends that the KEIP benefits at issue in the contract claim
are "non-ERISA covered benefits."  (doc. 13, p. 11).  As a non-
ERISA benefits plan, the KEIP is entirely separate from and

administered apart from the EMSP.  *Id*. at 13.  Rea relies on *Aetna Health, Inc. v. Davila*, 542 U.S. 213, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), to support his argument that ERISA does not preempt a contract claim because payment of benefits under the KEIP is a legal duty independent of ERISA.  *See* doc. 13 at 12.

       We conclude that this claim "relates to" the EMSP, an ERISA-covered plan, and it is, therefore, preempted by ERISA. ERISA was enacted to "'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Davila*, 542 U.S. at 208 (quoting 29 U.S.C. § 1001(b)).  To effect this purpose, ERISA provides "a uniform regulatory regime over employee benefit plans" with "an integrated system of procedures for enforcement." *Id*. (internal quotations omitted).  As part of this comprehensive scheme, ERISA set forth "expansive pre-emption provisions" so that "employee benefit plan regulation would be 'exclusively a federal concern.'"  *Id.* (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

       ERISA's "deliberately expansive" preemption provision provides: "Except as provided in [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." *Pilot*

*Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); 29 U.S.C. § 1144(a).[8]  The provision preempts both state common law and statutory claims.  *Pilot Life*, 481 U.S. at 47.  For example, a state statute "relates to" ERISA if it "duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Davila*, 542 U.S. at 209.  In examining the preemption link between ERISA and the state cause of action, the Third Circuit has looked to whether (1) the ERISA plan was a critical factor in establishing liability in the state law claim, and (2) whether a district court's inquiry in the state law claim would ultimately be directed to the ERISA plan.  *See 1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992) (discussing *Ingersoll-Rand Corp. v. McClendon*, 498 U.S. 133 (1990)).

Here, Rea's breach of contract claim is based on Hershey's refusal to pay benefits under the KEIP, a benefits plan not covered by ERISA.  But Hershey's liability for failing to pay the KEIP benefits is entirely dependent on whether Rea was an EMSP participant.  The allegations in Count III demonstrate the link between EMSP eligibility and the KEIP benefits Rea seeks as damages.  Paragraph 60 provides:

---

[8]  ERISA's saving clause, 29 U.S.C. § 1144(b)(2)(A), excludes state laws which regulate insurance, banking, or securities from the preemption provision.  The saving clause is inapplicable for Rea's breach of contract claim.

> Under the terms of the KEIP, stock options
> granted *to employees who were entitled to*
> *severance benefits under the (Enhanced*
> *Mutual Separation) Plan* become fully vested
> as of the Separation Date, to be exercised
> within 90 days after the last day of the
> Separation Period.

(doc. 17, ¶ 60) (emphasis added).  Two paragraphs later, Rea

alleges:

> Under the terms of the KEIP, *employees who*
> *were entitled to receive benefits under the*
> *(Enhanced Mutual Separation) Plan* are
> entitled to participate in the Annual
> Incentive Plan during the Separation Period
> (i.e., the period during which separation
> pay is being paid).

*Id*. ¶ 62 (emphasis added).  Later, in detailing his damages, Rea

alleges:

> *But for the HET's purposeful, improper*
> *denial of Plaintiff's participation in the*
> *[EMSP]*, Plaintiff, according to the KEIP,
> could, and would have exercised his 11,000
> stock options, at a profit of approximately
> $194,018.25, he would have received a 2005
> AIP bonus of $47,695.31, and he would have
> received $9,362.50 as pro-rated 2006 AIP
> bonus.

*Id*. ¶ 66 (emphasis added).  Rea does not allege that Hershey had

any duty to pay the KEIP benefits independent of his eligibility

through the EMSP.  Therefore, the provisions of the EMSP would

be a critical factor in establishing Hershey's liability for

payment of the KEIP benefits.  The damages Rea seeks in this

claim are stock options and bonuses which would be calculated

and awarded pursuant to the terms of the EMSP.  *See Nobers*, 968

F.2d at 406 (citing calculation of damages pursuant to an ERISA

plan as evidence that a court's inquiry into a state law claim
would focus on construction of an ERISA plan).

Rea's reliance on *Davila* to support his argument is
misplaced.  In *Davila*, the Supreme Court considered whether, for
purposes of removal to federal court, ERISA preempted a claim
under a Texas statute which held managed care entities liable
for injuries caused by the failure to exercise ordinary care in
treatment decisions.  542 U.S. at 204.  The entities refused to
cover services requested by beneficiaries of the ERISA-regulated
benefits plan.  *Id.* at 205.  In finding the claim under the
Texas statute preempted, the Court explained that the duties
imposed by the Texas statute "do not arise independently of
ERISA or the plan terms."  *Id.* at 212.  The managed care
entities' conclusion that a particular treatment was not covered
by the plan was not the cause of any injuries.  *Id.* at 213.
Instead, "the failure of the plan itself to cover the requested
treatment would be the proximate cause" of any injuries.  *Id*.
Therefore, the state law claim would require interpretation of
the ERISA plan.  "Thus, ERISA preempted the state claim because
an action exclusively under the control of ERISA law–deciding
whether to grant benefits–was a necessary element of the state-
law cause of action."  *Hutchison v. Fifth Third Bancorp*, 469
F.3d 583, 588 (6th Cir. 2006) (discussing *Davila*).

Rea's breach of contract claim requires a similar
analysis.  The decision whether to pay the KEIP benefits to Rea

upon ending his employment at Hershey was dependent on his eligibility under the EMSP.  Like the managed care providers in *Davila*, Hershey's refusal to pay the KEIP benefits would require interpretation of the EMSP.  As noted above, Rea's allegations in the amended complaint reveal that Hershey's duty to pay the KEIP benefits arose from his EMSP eligibility.  This duty is a necessary element of Rea's breach of contract action and is preempted by ERISA.

Rea's argument that cases such as *Davila* "do not involve claims for benefits under a separate, non-ERISA benefits plans [sic] created and administered separately and distinctly from an ERISA plan" is unavailing.  (doc. 13, p. 12).  While the foundation for the state law claim in *Davila* was the employer's ERISA plan and the foundation for Rea's claim is the KEIP (a non-ERISA plan), both conditioned receipt of benefits on eligibility under an ERISA plan.  That the KEIP referred to the ERISA plan in awarding benefits upon separation does not take it beyond the reach of ERISA's preemption clause because the action exclusively under the control of ERISA law–eligibility for benefits–was a necessary element of Rea's breach of contract claim.  Consequently, we conclude that Rea's breach of contract claim "relates to" ERISA.[9]

---

[9]Our conclusion that ERISA preempts Rea's breach of contract claim extends to the claim for damages pursuant to the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.10, because such damages would also depend on Rea's eligibility under the EMSP.

D.   *Good Faith & Fair Dealing Claim*

Part C.2 of Rea's brief in opposition to the motion to dismiss (doc. 13) adds a claim against Hershey for breach of the duty of good faith and fair dealing in denying the KEIP benefits.  We will not consider this claim because "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)); *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp.2d 750, 775 n.9 (D.N.J. 1999).  Neither Rea's complaint or his amended complaint contained a claim against the Defendants for breach of good faith and fair dealing.  Pursuant to *Zimmerman*, we will not allow it to be raised for the first time in opposing Defendants' Motion to Dismiss.

<u>/s/William W. Caldwell</u>
William W. Caldwell
United States District Judge

Date: March 12, 2007

22

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


TIMOTHY A. REA,                          :
        Plaintiff
                                         :

        vs.                              :   CIVIL NO. 1:CV-06-1920

THE HERSHEY COMPANY 2005
ENHANCED MUTUAL SEPARATION PLAN,:
and THE HERSHEY COMPANY
        Defendants                       :


<u>O R D E R</u>


        AND NOW, this 12th day of March, 2007, upon

consideration of Defendants' Motion to Dismiss (doc. 9), filed

December 1, 2006, and based on the accompanying Memorandum, it

is ordered that Counts II and III of Plaintiff's amended

complaint  (doc. 17) are dismissed for failure to state a claim

upon which relief may be granted.



                                <u>/s/William W. Caldwell</u>
                                William W. Caldwell
                                United States District Judge